We will next hear argument in Dukes Bridge v. Rubin and Security Life of Denver Insurance Companies. And here, I think we will be directing our attention to the video monitors for argument by the appellants, followed by, is it Ms. Wall for the appellate who is going to be here live. So I assume we are fully connected by Zoom here. We'll start with Mr. Lipsius, but it doesn't appear we have some audio. I see him on the phone, so I don't know if we are trying to resolve an audio issue. Yes, is that Mr. Lipsius? That's fine. Let's hold off for a minute. So Ms. Wall, you can feel free to take a seat for now until the So we'll start with Mr. Lipsius. We can hear you. I'll just warn everyone in the courtroom, I think we have a one or two second delay between your audio and the video, so we will wait to see your lips stop moving before we jump in. And I understand, Mr. Lipsius, you would like to reserve one minute for rebuttal. That is correct, Your Honor. Okay, please Mr. Lipsius, I would like to start off with the choice of law issue, which is not what we are appealing, but has been raised by ING, by the insurance company. And I'd like to start off with the choice of law, because I believe 3103, both for the reasons that the district court, the magistrate judge raised in 3103, and for other interpretations of the statute, would mandate that the law of New York be applied. The judge found as a factual determination, and I realize that the defendants, the appellants, are asserting that the, the appellees, excuse me, are asserting that the factual determination should be overturned. But there was a factual determination, a very high, a very high element for them to, to defeat that. The factual determination clearly shows that it, that there has not been the proof that it's been delivered in New Jersey, and the indication of the proof was it was delivered in New York. Now, with the second issue within that, and just to be very succinct on it, under New York law and the cases that we have cited, where a policy is issued on the life of a resident of New York, even if the policy had been delivered out of New York under, under a long line of cases, most of them on the property and casualty side, but it's a very similar statute on the life side, New York law would be applied. So that's at least the starting point on that issue. That's true as to the contract question. It's not true as to the fraud question, is it? But the insurance issues that come up here are fraud on the policy. So it really would apply to the policy as well, because the standard of fraud as well would apply. But if we would look at the fraud, and this was not discussed by the judge, by the district court magistrate judge, on the fraud issue, most of the actions, the only issues that they claim take place in New Jersey possibly could have taken place is someone drilled out to find a document in New Jersey. Yeah, we also have some cases that say it's a place where the fraud is the harm occurs, not where the fraud, which would say New York. Okay. Yeah. So I think that I believe that's pretty clear as well. Now, on the return of the premium, I'd like to raise that the district court judge claims that the issue of to whom it would be returned, or the fact that what he raised itself was really sui sponte. That was raised by the judge itself. So it was not briefed, the big part of it, but part of it was briefed is the fact that the New York law is very clear. And the Mincho case, I may be mispronouncing it, the 1906 decision in Mincho really is goes against what the what the courts have done ever since then and before that. And that was very much limited to the fraud. That's very clear here. There was no fraud. I'm sorry. But isn't this a case of equity, as the district said, and that while there are plenty of cases, I sat in one in which return of the premiums would not be appropriate on the facts of this case, given who paid who would get it back, who is involved in the thing, how much was paid in did was an abuse of discretion in an equitable setting. Well, Your Honor, the fraud here was not there was no finding of fraud by the court on anyone but Mr. Rubin. There was no finding by Mr. by the Mermelstein defendants, by Dukes Bridge, by any of the parties in this Dukes Bridge is really a successor and interest to all of those that's right. The end of the court found that Dukes Bridge could not be found guilty of fraud because it wasn't in being and it wasn't willing to pierce the corporate veil to do that. But that doesn't mean that in an equitable setting, it doesn't say that these premiums should be returned when so much money was paid. Well, Your Honor, but neither was the Mermelstein trust found to be as committed to fraudulent acts. And I believe the courts look at the people receiving it as the fraudulent basis of saying, well, fraud, that exception of fraud. It doesn't, I believe, with all due respect, I don't believe it says just because security was defrauded by Mr. Rubin and they have a remedy against Mr. Rubin, that the party should suffer who paid the premium. Mr. Lipsitz, didn't the court also find that Mr. Mermelstein made some misrepresentations? But it did not find the trust made misrepresentations. To the extent that Dukes is stepping into the shoes, wouldn't Mermelstein's misrepresentations count as a strike against the trust and then so on down to Dukes? Well, I believe the court specifically found that the Mermelstein trust were not at all involved, whether it be the trustee or any of those parties. It is only the insured himself who may have made it. It was not found fraudulent. The court did not found that Mermelstein committed a fraudulent act. It just said there were misrepresentations on the application. There was no such finding of fraud. Counsel, who would the premiums go to if they were not returned? I believe, ultimately, under the agreements, and I know the judge said otherwise, it could be returned to the Mermelstein trust, which is a party here. This was something that was decided by the judge to respond to, so therefore it was not raised because it was decided to respond to. The district court didn't find that, didn't believe that it would go back there, did it? It just found that, it basically just found on its own to respond to that they didn't know who it would go back to, and therefore it shouldn't go back to Dukes, and if it doesn't go back to anybody else, that there should not be any payment. That's what the district court, I believe, that's the way I understood the district court decision. But that was never briefed before the district court as to who we'd go back to ever. That was the response by the court. Thank you. Okay, Mr. Lipsius, you have reserved one minute for rebuttal, so we'll see you again. Now we have counsel for Mr. Rubin. Good morning, your honors. May it please the court, my name is Michael Lichtenberg. I represent appellants across appellees, Joseph Rubin and Joseph Rubin Incorporated. I would like to call the court's attention to three issues regarding the choice of law. It is rather clear on the record that the security life issued the Nermalstein's policy for delivery in New York, and in fact had it delivered in New York. Yet now it urges this court to ignore the New York insurance law section 3103B that maintains that any policy of insurance delivered or issued for delivery in New York is governed by New York law. So the security life now urges this court to ignore the statute and apply instead a constructual choice of law provision. However, this court... Your argument is that the statute overrides the intent of the parties? Yes. Of course, your honor. Otherwise... Why should that happen? I mean, why should the statute override what the parties apparently implicitly agree to? Oh, well, first, it would defy the system of statutory regulation this state has designed for the business of insurance in this state to allow the parties at will to nullify the applicable statutory provisions. Furthermore, as this court has noted in Christiania General Insurance Corporation versus Great American Insurance in 1992, the defense of fraud in the inducement, a declaration that the contract was void ab initio. Therefore, security life cannot tentatively maintain that the entire policy in question is void ab initio, but its choice of law provision is not only valid, but controls this case in derogation of the applicable statute. As to the proof of damages issue, the security life has adduced not a scintilla of proof that they have sustained damages approximately because my client's statements and that the insurer's real reliance on said statements was reasonable. They now argue that we could not... What about the commission? What about the commissions that security life paid to Rubin? Why isn't that damages? The commission's payment was subsequent to the issue of the policy, and the issue of the policy required them to rely on the representations of my client reasonably. Well, but you said a moment ago there's no scintilla of proof of damages, and I'm asking why aren't the payment of the commission's proof of damages? Excuse me, the audio is breaking up. And as to the misrepresentation, at least as to the misrepresentation that there would be no one buying, paying, financing the insurance, that was a misrepresentation that was made, that the court found was reasonably relied on, and went directly to the issue. Your Honor, I respectfully suggest that they submit that this determination was patently erroneous because there was not a single effort that the security life has done in ascertaining the information submitted on the application. They have done no due diligence whatsoever. On the breach of contract, I'm not sure that New York requires any, that the reliance was reasonable, but under the circumstances it does look as though they had no reason to expect that there would be anything else. I mean, you want somebody who's buying insurance, who is issuing insurance, always have to go check all the data of everybody as to who's paying. That would be a mighty expensive thing for people to do, to make cost of insurance a heck of a lot higher. Yet this court has repeatedly held that a sophisticated party like this one is under a duty not to rely on a representation if, through minimal diligence, they would have discovered the truth. In this case, they had ample opportunities to obtain readily available information from public sources, but they have made no such attempt. Moreover, the fact that we have commissioned. Also, my basic problem, frankly, is this. If we take New York law as being the governing law, New York has any number of ways of protecting the insurance company while still allowing and protecting the genuine insurers while still allowing some of these stories to go forward. If instead, so that if we are under New York, we have to look to any number of equitable situations in this case, because that's what New York law is about. New Jersey instead decided that these are much too bad and so kills you to begin with. I don't think you can have it both ways. If it is New Jersey law, New Jersey is much more brittle, but it's brittle against you. If it's New York law, it seems to encourage all the kinds of things that the district court did. If you'd like to respond to that, your time is up, but you can briefly respond to Judge Calabresi if you'd like. Thank you, Your Honor. I again refer the court to the line of cases that this court has decided previously and that holds that, in fact, the party will not be heard to complain of fraud if its own lack of due diligence has resulted in the damages that it claims. Thank you. Thank you very much, counsel. We will now hear from the appellee, Ms. Wall. May I please the court, counsel? My name is Julie Wall, and I represent Security Life of Denver Insurance Company. This case involves a fraudulent scheme against Security Life, which the district court correctly found involved Rubin defendants and Dukes Bridges predecessors. The scheme caused Security Life to issue a $10 million life insurance policy on the life of Eugene Mermelstein that it otherwise  and it also caused Security Life to be embroiled in costly litigation that has lasted over a decade. I'd like to quickly address a couple of key issues, and then Security Life will rely on its briefs for the remainder of its arguments. I'd like to begin with the district court's ruling that Security Life can retain the premiums paid for the life insurance policy. Due to the clear material misrepresentations regarding other insurance in the $10 million life insurance policy application, the district court found that Security Life was entitled to rescission of that policy. It also found that Security Life was entitled to retain the premiums received related to that policy. Now, in a typical rescission case, the insurer would generally return the policy premiums at the time that the policy is rescinded. But rescission is an equitable remedy. And after having heard the evidence establishing the fraud scheme... So you're relying, as did the district court, on the Mincho case? That case, Your Honor, and other cases, essentially... All right. The Mincho case, which was decided a long time ago, talks about deducting the losses. Did the district court here make that kind of a calculation? In other words, what were Security Life's actual losses? Was there a calculation? I mean, it's getting some money. It's been awarded some damages against Rubin. Yes, Your Honor. So the out-of-pocket losses would have certainly been the commissions that it paid for the policy, for the attorney's fees, for 10 years of litigation. And, you know, I do believe what the court found here is that it could not tie Duke's bridge directly to the all these items. The damages are X dollars. And then look at what the premiums were, and then see whether... I mean, is Security Life making money off of this? And if so, should it be making money? So Security Life is not making money off of this. The commissions that were paid were over a million dollars. The premiums received... But the answer has to be no. They didn't make any calculation, but they put together the fact that there were large amounts paid together with the dubiousness of the people to whom the premiums would return. That is, they didn't do exactly what happened in Mangeau, which was a calculation. They did another kind of equitable decision, and that's the issue that's before us, was that an appropriate one, when they said much was paid out, was it really the same we're not looking at? But given the dubious quality of those who might get it back, it's the fair thing in this to go this way. But they didn't do... I mean, they didn't do the calculation. There's no question about that. I think that's right. At the district court level, when the judge issued his findings, effects, and conclusions of law, he basically came to a determination that it would not be equitable for Dukes Bridge to receive premiums back in a situation where there was fraud. All that would do is encourage more fraud. So we'd have a situation where... So that in one sense, they went beyond the Mangeau case, old as it was. Well, Your Honor, I don't think that's the only case. There are a number of cases, certainly that talk about rescission being equitable remedy. There are also cases in the if a contract is illegal, that you leave the parties where you found them. Now, the district court did not find that there was a lack of insurable interest here. We are arguing for that under New Jersey law. So I do think it makes sense to talk about the choice of law issue briefly. And the district court started by finding that the parties intended that New Jersey law apply to the policy. No, no, that's it. The first step is New York law decides the choice of law. That is correct. Because the case is brought in New York. So it's a New York issue of what New York would do in this situation. It is. And the court looked at whether the outcome for an insurable interest claim would be different under New York or New Jersey law. And it surely would. Yeah. And then they would say, what would New York law, New York courts do in that situation? Would they apply New York law in this different or would they apply New Jersey law? And this goes to two things on the contract, whether the insurance law statement that New York law applies regardless of the intent of the party covers intent of the party if there was one. And two, in fraud, you have these series of cases in our court that say that purporting to apply New York law, let's say that where there is a fraud, it's not the place where the fraud is made, but the people are injured by the fraud. And that's how it's concluded in New York. Now, what was wrong with that? So what the district court, I think, did incorrectly with respect to the choice of law decision for the contract-based claims is after finding that the parties intended that New Jersey law apply, that they made an implicit choice of New Jersey law, it then found factually incorrectly in our view that the policy was delivered in New York and went ahead and implied section 3103B because of delivery in New York. But now that's a factual finding that's reviewable only for clear error, right? That is, Your Honor, and we would submit that it was clear that the policy was delivered to the insured in New Jersey. So what do you do about the evidence that the court cited, like DPS delivery receipt? I mean, that's evidence that supports the district court's argument that the evidence was marginally stronger in favor of concluding that New Jersey would be the right answer. That's insufficient for us to overturn a factual finding, right? Well, I agree that there is evidence that the agent received the policy in New York. But with respect to delivery to the insured, the evidence that we have shows that there is an amendment, a policy delivery receipt, and the policy were all sent to Rubin at the same time. There's conflicting evidence, and the district court resolved the conflict in favor of finding delivery in New York. No, I think the difference is whether we're talking about delivery to the agent or delivery to the insured. And one of the documents that went along with the policy, the amendment to the policy says on its face The question of whether delivery to an agent is in fact delivery to an insured is in fact itself a fact question, isn't it? And the district court found that delivery to the agent was not delivered to the insured, but then went on and looked at where the delivery happened to the agent, which is why I think we have a problem here. The other issue is with Section 3103 is that it doesn't require that New York choice of law provision be read into a policy. There is no choice of law provision, express choice of law provision in this policy. If there were, for another state, I think what counsel is arguing is you would read that out. But here, what we have is an implicit choice of New Jersey law, which the statute does not address that situation. So it's our position that we don't need to decide what would happen if there were an express rejection of this section of New York law, because there wasn't an express. At most, it was an implicit choice. That's correct, which is why I would submit that this statute section doesn't apply in this situation. Let's cut it the other way. With respect, I know Your Honor raised earlier the choice of law for the fraud. That is a slightly different analysis, and I certainly agree that that's a conduct regulating rule, and that essentially where the wrongful conduct occurred is what the court would look at for deciding choice of law for the fraud issue. I did want to comment quickly. I do believe that Mr. Rubin has waived some of the arguments that he made because he did not file a response to Security Life's brief. So from a technical perspective, I wanted to raise that issue, and I appreciate time in the court. Your Honor, do you have any argument against if New York law applies the court's decision that Dukes Bridge and the daughter were not guilty of fraud? Your Honor, yes. Our position on Dukes Bridge's involvement in the fraud is that not only is it a direct successor to two entities, Aqua Blue and Bridgewood, but it found liable for fraud. It's in your brief, but since you haven't mentioned it yet. What I would also add is that it was very clear before Dukes Bridge purchased the policy at the auction that there was a problem with the application. Dukes Bridge tried to get Ms. Creed to change the basically backdate documents because she had no authority. Your time is up, but I do want – looking at this completely equitably, can we really say that this insurance company had completely clean hands, too? I mean, wasn't this a situation in which there was plenty of glory on everybody's side? I don't think so, Your Honor. What the underwriter testified to is that with respect to the other insurance misrepresentations, every time she had a question, she followed up on that question. First, the answer was no, they didn't have other insurance. She saw an indication of the name Anaco Insurance Company. She reached out to the agent – reached out through the broker to the agent to find out what happened. Now, as to some of these things, there's no doubt. On the other hand, the evidence was excluded that the insurance company, while it was asking these questions, did in fact insure to people who had plenty of other insurances. So in some of these games, they were playing along. And, Your Honor, what Ms. Cutts testified, the underwriter, about those documents is that they were incomplete files. She had no personal knowledge of them, so there's no – no one authenticated those. I'm not arguing the correctness of excluding that, but if that evidence was relevant – was, in fact – doesn't it show something? I mean, I'm talking equity now. Sure. I think, Your Honor, what that evidence shows is that it's incomplete. Even if you let it in, it can't possibly be analyzed. All of these things are very difficult for a court of appeals to do. On the other hand, it is precisely what we hope that a good district judge will look at. Thank you. I understand that my time is up. Thank you so much for your time, Mr. – Thank you very much, counsel. Mr. Lipsius will rejoin us by Zoom. Mr. Lipsius, you have one minute for rebuttal. And I will try to make it within the minute. I'm obviously – And I'm sorry, Mr. Lipsius, the audio is not great, so if you could speak slowly and loudly. Sure. Are you able to hear me now? Good. Okay. So it was just said that there were financial misstatements having to do with other insurance policies, et cetera. That was not attached to the policy. And under New York law, it is very clear that if it is not attached to the policy, it is irrelevant. And the only finding of the judge, of the district judge, was that we did not object to the entry of a document that had been submitted by Mr. Rubin. And I just wanted to say very quickly that that document had to be admitted because it went on the Rubin issues, which are at the same trial. With the five seconds left, I would like to raise the issue that Your Honor just raised, and that is they understood they were violating their underwriting guidelines. And the testimony I stated in our brief was we wanted to write the greater premium, and we avoided it or ignored it. And I believe under New York law, the judge should have considered all those things were ignored. With that, I thank you very much. I thank you for letting me participate by Zoom and phone in these trying times. Thank you. Thank you to all counsel. We will reserve decision.